PER CURIAM.
The Florida Bar, pursuant to Rule Regulating the Florida Bar 1-12.1, has filed its annual proposed changes to the Rules Regulating The Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const. The Board of Governors of The Florida Bar has approved all of the substantive changes presented in this petition; and all *1003 the proposals, except several purely technical revisions, were published for comment in accordance with rule l-12.1(g).[1] Only two comments were filed.
After reviewing the petition, and considering the comments as well as the oral arguments, we adopt all the Bar’s proposed changes. Below we discuss each of the substantive changes as well as the two comments filed.
BYLAW 2-4.5 NOMINATIONS FOR PRESIDENT-ELECT
The amendment to bylaw 2^4.5 clarifies and revises certain allowable campaign activities and time periods applicable to individuals nominated as candidates for the office of president-elect and those seeking support for their nomination as candidates. Existing subdivisions are rearranged so that the rale initially authorizes the Board of Governors of The Florida Bar to adopt standing policies that govern the conduct of candidates for the office of president-elect and to create an oversight committee. Subdivisions are revised to make clear that campaigns for president-elect include distinct “nomination” and “election” phases. Problematic verbiage and terms that the Bar felt can be better defined and updated through its standing policies are deleted.
RULE 3-4.5 REMOVAL FROM JUDICIAL OFFICE BY THE SUPREME COURT OF FLORIDA
Rule 3^4.5 currently provides that whenever a judge is removed from office on the basis of a Judicial Qualifications Commission (JQC) proceeding, the removal order also may suspend the judge from the Florida Bar pending further proceedings. The rule as amended will allow the Bar to seek leave to intervene in any proceeding in which the JQC recommends that a judge be removed from office and to seek disciplinary action if intervention is granted and the judge is removed by the Court. We agree that allowing the Bar to intervene in these proceedings will further the apparent purpose of the constitutional provision-to streamline the system and ensure that judges who are guilty of misconduct are subject to attorney discipline, if appropriate, in a timely manner.[2]
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
The amendment to rule 3 — 7.6(j), Complaining Witness, allows a referee to permit a complaining witness to remain in the hearing room and observe the disciplinary hearing when the respondent is also present, unless it is found to be impractical due to unreasonable delay or other good cause. The amendment also confirms that the complaining witness is not a party to the disciplinary proceeding and has no right to appeal. This Court routinely receives inquiries from individuals who are unhappy with the Bar’s handling of their complaint against an attorney. Consistent with the Court’s standard response to such inqui *1004 ries, this amendment makes clear that a complainant has no right to appeal in a Bar disciplinary proceeding.
RULE 3-7.13 INCAPACITY NOT RELATED TO MISCONDUCT
The amendment to rule 3-7.13 changes the procedure for reinstatement after placement on the inactive list for incapacity not related to misconduct, from petition to the Board of Governors with no further action by the Court, to a petition to the Court which would be processed in the same manner as reinstatements after acts of misconduct. The Bar maintains that if an order of this Court is required for placement on the inactive list for reasons of incapacity, see R. Reg. Fla. Bar 3-7.13(a), an order of similar stature should be necessary to reinstate the attorney. According to the Bar, members seeking reinstatement under this rule often request such action by this Court.
One of the comments received addresses this amendment. Attorney John B. Bowman questions the propriety of requiring an incapacitated attorney to follow the same procedure for reinstatement as an attorney found guilty of misconduct. Mr. Bowman is concerned that this might create the perception that mental or physical incapacity is akin to misconduct. Mr. Bowman also points out that, under the rules that apply to reinstatements after acts of misconduct, the attorney can be subjected to, among other things, making financial disclosures unrelated to his or her condition, appearing before a referee for a full hearing, and paying costs for the proceedings. Therefore, he fears that the proposed change will discourage attorneys who need help from seeking it because doing so could result in a lengthy reinstatement proceeding.
At oral argument, counsel for the Bar explained that the incapacity not related to misconduct rule is a part of the rules of discipline and that most attorneys who go on the inactive list under the rule do so in connection with a disciplinary investigation and agree to go on the inactive list in order to settle the matter. Under the current rule, the Board can simply approve or reject the request for reinstatement; there are no standards or procedures for considering the petition. The only procedure provided for by the current rule is review by this Court should the Board reject the petition for reinstatement. Although the current rule does not provide for an order of reinstatement from this Court, an informal procedure has developed where once the Board approves reinstatement, the Bar files a notice of reinstatement with this Court requesting an order approving the Board’s action nunc pro tunc. This amendment offers standards and procedures for considering these petitions for reinstatement which are lacking under the current rule. As Bar counsel pointed out at oral argument, there also are summary procedures that can be followed if the Bar does not oppose reinstatement. See R. Reg. Fla. Bar 3-7.10(h)(4) (providing that Bar can stipulate to reinstatement if, after the completion of discovery, bar counsel is unable to discover evidence on which denial of reinstatement may be based). Moreover, a request or agreement to go on the inactive list under rule 3-7.13 is processed in the same manner as proceedings involving acts of misconduct. See R. Reg. Fla. Bar 3-7.13(a). Therefore, it is only logical that petitions for reinstatement be processed in a similar fashion. While it is true that the amendment to rule 3-7.13 will result in a more complex procedure for processing petitions for reinstatement under the rule, we agree with the Bar that, under the circumstances, clear standards and procedures for reviewing these petitions are preferable to the current state of affairs. However, we caution the Bar that the best of the prior, informal system should be retained, and the creation of a more formal system should not result in the needless expenditure of resources by an affected attorney, the Bar or this Court.
*1005 RULE 3-7.16 LIMITATION ON TIME TO BRING COMPLAINT
New subdivision (d) of rule 3-7.16 requires that inquiries or complaints about the conduct of a constitutional officer who is required to be a member in good standing of The Florida Bar be commenced within six years after the individual leaves office. The new subdivision clarifies the length of time the Bar has to bring disciplinary action against a former judge or other constitutional officer who while in office must be a member in good standing of The Florida Bar and makes clear that a limitation similar to the six-year time limit contained in subdivision (a) would not commence until a constitutional officer vacates office.
RULE 4-1.5 FEES FOR LEGAL SERVICES
The Board of Governors has amended the comment to rule 4-1.5 to provide that contingent fees are prohibited in criminal and certain domestic relations matters and that so-called “results oriented” or “bonus” fees in domestic relations cases have been held to be impermissible contingency fees. The committee offers the commentary to provide better notice of what types of fee arrangements are considered impermissible under the Rules Regulating the Florida Bar.
SUBCHAPTER 6-22. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ANTITRUST AND TRADE REGULATION LAWYER
New subchapter 22 of chapter 6, Legal Specialization and Education Programs, sets forth standards for establishing a new board certification in the field of antitrust and trade regulation law. It is the result of what the Board felt was “sufficient member interest” and is patterned after other approved areas of practice under chapter 6.
SUBCHAPTER 6-23. STANDARDS FOR CERTIFICATION OF BOARD CERTIFIED LABOR AND EMPLOYMENT LAWYER
New subchapter 23 of chapter 6 sets forth standards for establishing a new board certification in the field of labor and employment law. It also is the result of sufficient member interest and is patterned after other approved areas of practice.
One of the comments filed with the Court addresses this proposal. Attorney Charles S. Caulkins is concerned that the proposed certification process contemplates a single certification in labor and employment law, when “labor” and “employment” are distinct fields of practice and most “labor and employment” attorneys practice almost exclusively employment law. According to Mr. Caulkins, these attorneys have little or no experience in traditional labor law, which includes such things as collective bargaining and proceedings before the National Labor Relations Board. He fears that allowing an attorney without experience in labor law to represent herself as a “board certified” expert in employment and labor law would be misleading to the public. Mr. Caulkins raises some valid concerns; however, we are certain that in developing the standards for board certification the Labor and Employment Law Certification Committee considered the “realities” of this practice area. At oral argument, the Bar assured us that these standards will ensure competence in both labor and employment law. As defined in rule 6-23.2(a), this new certification area expressly “encompasses both public and private sector collective bargaining and the many state and federal laws that apply to the employment relationship,” including “the National Labor Relations Act.” The minimum standards for certification under rule 6-23.3(d) provide, among other things, that an applicant must submit the names and addresses of six attorneys who are familiar with the applicant’s practice and who can attest to *1006 the applicant’s special competence and substantial involvement in the field of labor and employment law. To demonstrate substantial involvement in the field of labor and employment law under rule 6-23.3(b), the applicant must submit a form questionnaire containing information concerning the frequency of the applicant’s work in the field of labor and employment law and the nature of the issues involved. Written or oral supplementation may be required by the certification committee. These rules would seem to safeguard against someone with no experience in labor law being certified in the field.
The Florida Bar Board of Legal Specialization and Education does an outstanding job in administering and overseeing Florida’s Lawyer Certification Plan. As part of the Board’s ongoing duties, at least annually it must review the status and conditions of the plan and report its conclusions to the Board of Governors. See R. Reg. Fla. Bar 6-3.1(h). The credibility of the certification program depends on the quality of the standards and testing employed in each certification area. In this regard, both the Board of Legal Specialization and Education and the Labor and Employment Law Certification Committee have a continuing obligation to review the minimum standards and testing procedures for certification to ensure that the certification process can be relied upon by the public. We are confident that, under the procedures for reviewing the certification plan, any inadequacies with the standards for this or any other certification area will be readily identified and corrected. Nevertheless, we thank Mr. Caulkins for bringing his concerns to our attention, and encourage him and other practitioners in this area to monitor the program and contact the Board or the Certification Committee should deficiencies be identified.
SUBCHAPTER 8-5 IMMUNITY
New subchapter 5 of chapter 8, Lawyer Referral Rule, gives absolute immunity from civil liability for all acts in the course of official duties to members, directors, officers, and staff of The Florida Bar Lawyer Referral Service and to local bar associations with a lawyer referral service. The new provision confers immunity similar to that conferred by rule 3-8.1(j) to members of the standing committee that administers the Bar grievance mediation group, and by rule 10-10.1 to the standing committee and circuit committees on the unauthorized practice of law.
RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
New subdivision (b)(6) of rule 10-3.2 authorizes the standing committee on the unauthorized practice of law (UPL) to impose a civil fine of up to $500 per incident in cases where a cease and desist affidavit and fine have been agreed to by a UPL respondent. Under this provision the standing committee may impose a fine only when the respondent has entered into an agreement that includes the imposition of a fine. It is hoped that this will provide the standing committee greater flexibility in the resolution of cases, including a penalty short of criminal contempt. The remainder of the changes to rule 10-3.2 involve reorganizing the various duties of the standing committee among the various subdivisions.
RULE 10-4.1 (CIRCUIT COMMITTEES) GENERALLY
The amendments to rule 10-4.1 complement the proposed changes to rule 10-3.2, Duties of the Standing Committee. The amendment clarifies that a circuit committee may close cases and may resolve eases through acceptance of a cease and desist affidavit, unless staff counsel objects. It moves subdivision (c)(3), regarding litigation recommendations, to subdivision (c)(4) and clarifies that litigation recommendations must be reviewed by the standing committee. Language is added to subdivision (c)(3) to allow circuit committees to forward to staff counsel for review by the *1007 standing committee recommendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident.
RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
The amendment to rule 10-6.3(a) adds language authorizing circuit committees to forward reports to UPL staff counsel in those cases where a cease and desist affidavit and monetary penalty are recommended and clarifies that all recommendations for a cease and desist affidavit with a monetary penalty must be reviewed by the standing committee. These amendments conform circuit committee investigative procedures to the proposed changes in the authority of circuit committees and the statewide committee provided in rules 10-3.2 and 10-4.1.
RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
The amendment to rule 10 — 7.1(d)(1) allows a referee to recommend that this Court impose a civil penalty not to exceed $1000 per incident in proceedings for in-junctive relief.
RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
The amendment to rule 10-7.2 raises the possible fine in an indirect criminal contempt case from $500 to $2500 and changes the requirements for indigency to conform to recent amendments to section 27.52, Florida Statutes (1999).
RULE 14-5.3 (FEE ARBITRATION RULES OF PROCEDURE) IMMUNITY
New rule 14-5.3 provides general civil immunity to fee arbitration committee members, program arbitrators, and bar staff for actions taken within the scope of the fee arbitration program. It is similar to the immunity that is provided for members of grievance mediation program standing committees under rule 3-8.1(j) and UPL committee members under rule 10-10.1.
RULE 17-1.4 (AUTHORIZED HOUSE COUNSEL RULE) REGISTRATION
New subdivision (a)(2)(C) of rule 17-1.4 requires an authorized house counsel registrant to certify that he or she is not subject to a disciplinary proceeding or outstanding order of reprimand, censure, or disbarment for professional misconduct by the bar or courts of any jurisdiction at the time of application. This is consistent with the codified definition of an authorized house counsel found in rule 17-1.2(a).
RULE 18-1 MILITARY LEGAL ASSISTANCE COUNSEL RULE, GENERALLY
RULES 18-1.1 PURPOSE AND 18-1.5 CERTIFICATION
The amendments to rules 18-1.1 and 18-1.5 change references from “practice in Florida” to “practice before Florida courts.”
RULE 18-1.2 DEFINITIONS
The amendment to subdivision (a)(4) of rule 18-1.2 changes references to the “Bridge the Gap Seminar” to “Practicing with Professionalism Program.” The amendment to subdivision (d) revises the definition of authorized legal assistance client to conform eligibility requirements to the financial guidelines of the Legal Services Corporation, and to broaden the pool of potential program clients to include certain retirees and dependants, plus selected survivors of deceased active duty members.
RULE 18-1.3 ACTIVITIES
The amendment to rule 18-1.3 deletes the requirement that a separate written client/supervising attorney consent and approval be filed in each case and ih its place *1008 requires that all documents filed by a military legal assistance attorney include a notation that counsel is qualified under the rule and is a licensed attorney, indicating the jurisdiction to which the attorney is admitted and attorney’s bar number.
RULE 18-1.4 SUPERVISION AND LIMITATIONS
The amendment to subdivision (c)(1) of rule 18-1.4 .clarifies that authorized legal assistance attorneys may represent clients only in “residential” landlord-tenant disputes. The amendment to subdivision (c)(3) of the rule adds dissolution of marriage to the permitted areas of domestic relations representation and confirms that modifications of prior judgments or orders are allowable areas of domestic relations practice. The amendment to subdivision (c)(4) clarifies that authorized probate representation may include disposition of property without administration. The amendment to subdivision (c)(7) clarifies that the rule is not meant to limit applicable law regarding pro hac vice practice or other activities of foreign attorneys.
Accordingly, we amend the Rules Regulating The Florida Bar as reflected in the appendix. New language is indicated by underscoring; deletions are indicated by struck-through type. The comments are included for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall take effect immediately.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
APPENDIX
BYLAW 2-4,5 NOMINATIONS FOR PRESIDENT-ELECT
(a) Policies. The Board of Governors of The Florida Bar is hereby authorized to adopt standing policies that govern the conduct of candidates and aspirants seeking support for their nomination as candidates, which shall include creation of a committee to oversee the conduct of such individuals and promulgation of sanctions for failure to comply with these rules or the policies adopted by authority hereof.
(b) Nominations Process. Any member of The Florida Bar in good standing may be nominated as a candidate for president-elect by petition signed by not fewer than 1 percent of the members of The Florida Bar in good standing. Such nominating petitions shall be ■ filed with the executive director at the headquarters office on or after November 15 and on or before 5:00 p.m., eastern time, December 15 of the year preceding the election. Nominees shall endorse their written acceptance upon such petition. In the event that no member of The Florida Bar in good standing shall be nominated, the board of governors shall thereafter nominate at least 1 candidate for the office of president-elect.
Except as otherwise specified in standing board policies, Nno mailings or solicitations shall be made prior to-No-ve-mbe-r ígcampaigning for the purposes of seeking support for the nomination of a candidate to the office of president-elect shall be conducted prior to November 15 of the year preceding the election.
(be) CampaignsElections Process. Campaigns by nominees for election to the office of president-elect shall not be conducted and electioneering or campaign activities-shall not commence until November 15 and shall end on March 21 as further specified in standing board policies. In the event of a runoff election, such activities may continue until April 22.
The board of governors of The Florida Bar is hereby' authorized to adopt; standing policies that govern the conduct' of-candidates,- — which shall include creation of a committee to oversee the -conduct of such candidates and promulgation of sanctions for failure to comply with these rules or the policies adopted by authority hereof.
*1009 RULE 3-4.5 REMOVAL FROM JUDICIAL OFFICE BY THE SUPREME COURT OF FLORIDA
Whenever a judge is removed from office by the Supreme Court of Florida on the basis of a Judicial Qualifications Commission proceeding, the removal order, when the record in such proceedings discloses the appropriate basis, may also order the suspension of the judge as an attorney pending further proceedings hereunder.
When the Judicial Qualifications Commission files a recommendation that a judge be removed from office, The Florida Bar may seek leave to intervene in the proceedings before the Supreme Court of Florida. If intervention is granted, The Florida Bar may seek disciplinary action in the event the judge is removed by the court.
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge’s circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant, v. (name of respondent), Respondent,” and “In The Supreme Court of Florida (Before a Referee).”
(e) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned. Assistant bar counsel shall serve under the general supervision of bar counsel.
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. Staff counsel shall prepare the complaint and file the same in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against 1 or more respondents, and charges may be against any 1 or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
*1010 (2) Answer and Motion. The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent’s answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on the staff counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of' the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If- it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 days’ notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
(i) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(j) Complaining Witness. The complaining witness is not a party to the disciplinary proceeding, and shall have no rights other than those of any other witness; the complaining witness has-no right to be present during a hearing or trial but. However, unless it is found to be impractical due to unreasonable delay or other good cause, and after the complaining wit *1011 ness has testified during the case in chief, the referee may grant the complaining witness the right to be present at any hearing when the respondent is also present. A complaining witness may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial. The complaining witness shall have no right to appeal.
(k) Referee’s Report.
(l) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of ' all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the- same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E)a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
(2) Filing, The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of The Florida Bar. The referee shall serve a copy of the record on staff counsel with the report. Staff counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction,
(Z) The Record.
(1) Recording of Testimony. All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(m)Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may *1012 be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n) Cost of Review or Reproduction.
(1) The charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to which the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar’s consent.
(o) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar’s costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Respondent’s Costs. When the bar is unsuccessful in the prosecution of a particular matter, the referee may assess the respondent’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.
RULE 3-7.13 INCAPACITY NOT RELATED TO MISCONDUCT
(a) Proceedings Without Adjudication of Incompetence or Hospitalization Under the Florida Mental Health Act. Whenever an attorney who has not been adjudged incompetent is incapable of practicing law because of physical or mental illness, incapacity, or other infirmity, the attorney may be classified as an inactive member and shall refrain from the practice of law for such reason even though no misconduct is alleged or proved. Proceed *1013 ings under this rule shall be processed under the Rules of Discipline in the same manner as proceedings involving acts of misconduct.
A member who has been classified as inactive under this rule may be reinstated upon petition to and approval-by-th& board of governors. — A rejection-of-such petition may be reviewed -by — petition--to the Supreme Court of Florida in the same manner as in proceedings for reinstatement after suspension for acts of misconduct.
(b)Proceedings Upon Adjudication of Incompetence or Hospitalization Under the Florida Mental Health Act. A lawyer who has been adjudicated insane or mentally incompetent or hospitalized under the Florida Mental Health Act shall be classified as an inactive member and shall refrain from the practice of law. Upon receipt of notice that a member has been adjudicated incompetent or hospitalized under the Florida Mental Health Act, The Florida Bar shall file notice thereof with the Supreme Court of Florida. Thereafter the court shall issue an order classifying the member as an inactive member.
If an order of restoration is entered by a court having jurisdiction or the lawyer is discharged from hospitalization under the Florida Mental Health Act, the lawyer may be reinstated upon application to and approval by the board-of -governors. — A ■rejection of such petition may-be-reviewed by petition-to-the-Supreme Court of Flori-4a in the same manner as in proceedings for reinstatement after suspension for acts of misconduct.
RULE 3-7.16 LIMITATION ON TIME TO BRING COMPLAINT
(a) Time for Inquiries and Complaints. Inquiries raised or complaints presented by or to The Florida Bar under these rules shall be commenced within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered.
(b) Exception for Theft or Conviction of a Felony Criminal Offense. There shall be no limit on the time in which to present or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.
(c) Tolling Based on Fraud, Concealment or Misrepresentation. In matters covered by this rule where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint, the limitation of time in which to bring an inquiry or complaint within this rule shall be tolled.
(d) Constitutional Officers. Inquiries raised or complaints presented by or to The Florida Bar about the conduct of a constitutional officer who is required to be a member in good standing of The Florida Bar shall be commenced within 6 years after the constitutional officer vacates office.
RULE 4-1.5 FEES FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a non-client party, or any court, as to either entitlement to, or amount of, the fee.
*1014 (b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(d) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer *1015 or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
(ii) “This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33 1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
*1016 c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33 1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii) In cases where the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney’s fee in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(n) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services *1017 to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the *1018 case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in ad-vanee for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire ease, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and *1019 you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
Client Signature
Date
Attorney Signature
Date
Comment
Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4 — 1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to de *1020 fine the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4 — 1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4 — 1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4^1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4 — 1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4 — 1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4 — 1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4 — 1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4 — 1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4 — 1.5 (f) (4) (B) (iii) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery *1021 being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Division of fee
A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
Disputes over fees
Since the fee arbitration rule (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4-1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4 — 1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4 — 1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4-1.5(f)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substan *1022 tive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4 — 1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
6-22, STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ANTITRUST AND TRADE REGULATION LAWYER
RULE 6-22.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Antitrust and Trade Regulation Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of antitrust law, unfair methods of competition, and deceptive, unfair, or unconscionable trade practices and who have the special knowledge, skills, experience, and judgment to be properly identified to the public as certified antitrust and trade regulation lawyers.
RULE 6-22,2 DEFINITIONS
(a) Antitrust Law. “Antitrust law” covers the practice of law dealing with anti-competitive conduct or structure that may reduce consumer welfare in the United States. The primary federal antitrust laws are the Sherman Act, the Clayton Act, the Robinson-Patman Anendments to the Clayton Act, and the Federal Trade Commission Act. In addition, there are parallel state statutes. Generally, the practices that the antitrust laws are concerned with involve, but are not limited to: price fixes, limitations on production, division of markets, boycotts, attempts to monopolize and monopolization, tying of products, covenants to restrain trade, exclusive dealing contracts, price discrimination, and other exclusionary, predatory, or economically discriminatory activities.
(b) Trade Regulation Law. “Trade regulation law” covers the substantive area of law dealing with deceptive, unfair, or unconscionable acts or practices, and unfair methods of competition under the Federal Trade Commission Act and Florida’s Deceptive and Unfair Trade Practices Act.
(c) Practice of Law. The “practice of law” for this area is defined as set forth in rule 6-3.5(c)(l).
(d) Contested Matters. “Contested matters” shall be defined as controversies in which the applicant evaluated, handled, and resolved issues of fact and law before state or federal courts, federal or state administrative agencies, or arbitrators.
RULE 6-22.3 MINIMUM STANDARDS
(a) Substantial Involvement and Competence. To become certified as an antitrust and trade regulation lawyer, an applicant must demonstrate continuous and substantial involvement and competence in substantive antitrust principles and deceptive, unfair, or unconscionable acts or practices in multiple areas of commerce. Substantial involvement and competence shall be demonstrated by:
*1023 (1) Minimum Period of Practice. The applicant must have actually practiced law for 5 years immediately preceding the filing of the application for certification, during which the applicant was involved in at least 8 substantial matters involving antitrust or deceptive, unfair, or unconscionable acts or practices.
(2) Minimum Number of Matters. The applicant must have handled a minimum of 8 contested matters that involved representation of a client beyond counseling during the 10 years immediately preceding application. All such matters must have involved substantial legal and factual issues, and at least 50 percent of the matters must have involved federal antitrust law or state or federal deceptive or unfair trade practices. In each of these 8 matters, the applicant shall have had senior level responsibility for all or a majority of the counseling, advice, presentation of evidence, argument to the tribunal, and representation of the client. For satisfaction in whole or in part of the requirement of 8 contested matters, the antitrust and trade regulation certification committee shall consider involvement in protracted matters as separate matters on the following basis: every documented 300 hours of work on antitrust issues in a case shall be considered to be the equivalent of an additional matter for purposes of meeting the threshold of a minimum of 8 contested matters during the 10 years immediately preceding application. For good cause shown, for satisfaction in whole or in part of the requirement of 8 matters in which the applicant had senior level responsibility, the antitrust and trade regulation certification committee shall consider verified substantial involvement in matters involving antitrust or deceptive, unfair, or unconscionable acts or practices at a government agency.
(3) Substantial Involvement. The applicant shall have substantial involvement in matters involving federal antitrust, state or federal deceptive or unfair acts or practices, or unfair methods of competition sufficient to demonstrate special competence as an antitrust and trade regulation lawyer. Substantial involvement may be evidenced by active participation in client interviewing, counseling, evaluating, investigating, preparing pleadings, motions, and memoranda, participating- in discovery, taking testimony, briefing issues, presenting evidence, negotiating settlement, drafting and preparing settlement agreements, and/or arguing, trying, or appealing cases involving antitrust law, unfair methods of competition, or deceptive, unfair, or unconscionable acts or practices.
(b) Peer Review. The applicant shall select and submit names and addresses of at least 5 lawyers or judges, who are neither relatives nor present or former associates or partners, as references to attest to the applicant’s substantial involvement in antitrust and trade regulation law, as well as the applicant’s character, ethics, and reputation for professionalism. Such lawyers should be substantially involved in antitrust and trade regulation law and familiar with the applicant’s practice. In addition, the antitrust and trade regulation certification committee may, at its option, send reference forms to other attorneys, judges, or officers and make such other investigation and verification as necessary.
(c) Education. The applicant shall demonstrate completion of at least 50 hours of approved continuing legal education in the field of antitrust and trade regulation law within the 3 years preceding the date of application. Such education shall be approved by The Florida Bar and may include such activities as:
(1) teaching a course in antitrust or trade regulation law;
(2) completion of a course in antitrust or trade regulation law;
(3) participation as a panelist or speaker in a symposium or similar program in antitrust or trade regulation law;
(4) attendance at a lecture series or similar program concerning antitrust or trade *1024 regulation law, sponsored by a qualified educational institution or bar group;
(5) authorship of a published book on antitrust or trade regulation law, or of a chapter or article on such subjects in a professional publication . or journal; and
(6) such other educational activities as the antitrust and trade regulation certification committee may approve.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in antitrust and trade regulation law to justify representation of special competence to the legal profession and to the public. The award of an LL.M. degree from an approved law school in the area of antitrust or trade regulation law, within 8 years of application, may substitute as the written examination required by this subdivision. Any lawyer who is certified by The Florida Bar in business litigation or civil trial law, and who meets the minimum standards of rule 6-22.3(a)-(c), shall be exempted from the portion (if any) of the examination requirement of this subdivision that deals with the litigation process as distinguished from substantive law.
RULE 6-22.4 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a)Substantial Involvement. The applicant must show continuous and substantial involvement in the field of antitrust and trade regulation law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made by showing that antitrust and trade regulation law comprises at least 30 percent of the applicant’s practice, and that the applicant actively participated in client interviewing, counseling, evaluating, investigating, preparing pleadings, motions, and memoranda, participating in discovery, taking testimony, briefing issues, presenting evidence, negotiating settlement, drafting and preparing settlement agreements, and/or arguing, trying, or appealing cases involving antitrust law, deceptive, unfair, or unconscionable acts or practices, or unfair methods of competition.
(b) Minimum Number of Matters. The applicant must have handled a minimum of 4 contested antitrust or trade regulation matters since filing the last application for certification or recertification. All contested matters must have involved substantial legal or factual issues in the law of antitrust, deceptive, unfair, or unconscionable acts or practices, or unfair methods of competition. The applicant must submit samples of administrative, trial, or appellate memoranda or briefs written by the applicant and filed within the recertification period. Such documents shall be substantial in nature, state facts, and argue various aspects of substantive law. The quality of such documents will be considered in determining whether the applicant is qualified for recertification. On good cause shown, for satisfaction in part of the 4 antitrust matters, the antitrust and trade regulation certification committee may consider involvement in protracted matters on the same basis as set forth in rule 6-22.3(a)(2).
(c) Peer Review. An applicant for re-certification must submit the names and addresses of at least 3 lawyers and 1 federal or state judge or administrative law judge before whom the applicant has appeared as an advocate within the period since the last certification or recertification. Individuals used as references shall be sufficiently familiar with the applicant to attest to the applicant’s special competence and substantial involvement in antitrust and trade regulation law, as well as the applicant’s character, ethics, and reputation for professionalism. Lawyers who practiced law with the applicant during the recertification period and relatives may not be used as references. The antitrust and trade regulation certification committee *1025 may, at its option, send or authorize references to other attorneys, federal or state .judges, or administrative law judges.
(d) Education. The applicant must have completed at least 50 hours of approved continuing legal education in the area of antitrust and trade regulation, in accordance with the standards set forth in rule 6-22.3(c), since filing the last application for certification or recertification. Such continuing legal education must have entailed principles of antitrust law, unfair methods of competition, and deceptive or unfair trade practices.
(e) Waiver of Compliance. For an applicant who has been continuously certified as an antitrust and trade regulation lawyer for a period of 14 years or more, the antitrust and trade regulation certification committee may waive compliance with the substantial involvement, minimum contested matters, and any or all of peer review criteria for recertification, for good cause shown and provided the applicant has complied with all other requirements of this rule.
6-23. STANDARDS FOR CERTIFICATION OF BOARD CERTIFIED LABOR AND EMPLOYMENT LAWYER
RULE 6-23.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Labor and Employment Lawyer.” The purpose of the standards is to identify those lawyers who practice labor and employment law and who have demonstrated special knowledge, skills, and proficiency to be properly identified to the public as certified labor and employment lawyers.
RULE 6-23.2 DEFINITIONS
(a) Labor and Employment Law. The practice of labor and employment law encompasses advice and representation concerning the application and interpretation of public and private sector labor and employment law principles, as well as employment discrimination and employment-related civil rights law. The diversity of this practice area is demonstrated by the experience requirements set forth in rule 6-23.3(c), however, competent practice in labor and employment law requires a thorough knowledge of all legal aspects of the employment relationship, both in the private and public sector. This knowledge is particularly, necessary to fulfill the counseling obligations of attorneys toward their clients. This practice area encompasses both public and private sector collective bargaining and the many state and federal laws that apply to the employment relationship including, but not limited to;
(1) the National Labor Relations Act, as amended;
(2) the Fair Labor Standards Act;
(3) Florida’s public sector collective bargaining laws and career service appeals;
(4) the Employment Retirement Income Security Act;
(5) the Family Medical Leave Act;
(6) Title VII of the 1964 Civil Rights Act and Florida’s Civil Rights Act;
(7) the Americans With Disabilities Act;
(8) Occupational Safety and Health Act;
(9) the Age Discrimination in Employment Act; and
(10) the regulations promulgated thereunder.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(l).
RULE 6-23.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have at least 5 years of actual law practice of which at. least 50 percent has been spent in active participation in labor and employment law. At least 5 years of this practice shall be im *1026 mediately preceding the application for certification. An LL.M. in the field of labor and employment law may substitute for 1 of the 5 years of law practice required.
(b) Substantial Involvement. Substantial involvement means the applicant has devoted 50 percent or more of the applicant’s practice to matters in which issues of labor and employment law are significant factors and in which the applicant had substantial and direct participation in those labor and employment law issues. An applicant must furnish information concerning the frequency of the applicant’s work and the nature of the issues involved. Demonstration of this requirement shall be made initially through a form questionnaire approved by the labor and employment law certification committee, but written or oral supplementation may be required.
(c) Experience. The applicant shall have a total of 30 days acting as the primary attorney in litigation and/or administrative proceedings concerning labor and employment law issues, including but not limited to evidentiary hearings, arbitra-tions, collective bargaining, representing clients in relation to governmental agencies, mediations, court hearings, taking depositions, and oral arguments. Any such proceeding lasting less than 8 hours, but more than 5 hours, shall be credited a full day. Any such proceeding lasting less than 4 hours, but at least 1 hour, shall be credited a half day. This experience shall have been attained within the 5 years immediately preceding the filing of the application for certification.
(d) Peer Review. The applicant shall submit the names and addresses of 6 attorneys who are familiar with the applicant’s practice, excluding attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of labor and employment law, as well as the applicant’s character, ethics, and reputation for professionalism. The labor and employment law certification committee shall seek at least 3 additional secondary references. At least 1 of the 6 references shall be from a judge, arbitrator, mediator, or administrator before whom the applicant has appeared or practiced (or in the case of a mediator or arbitrator seeking certification, such references may be from attorneys who have appeared before the applicant) within the 2 years immediately preceding the application.
(e) Education. The applicant must demonstrate that during the 3-year period immediately preceding the date of the application, the applicant has met the continuing legal education requirements in labor and employment law. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 60 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to labor and employment law. The education requirement may be satisfied by 1 or more of the following:
(1) attendance at continuing legal education seminars in labor and employment law;
(2) lecturing at continuing legal education seminars in labor and employment law;
(3) authoring articles, books, or other professional publications on labor and employment law;
(4) teaching courses in labor and employment law at an accredited law school or other graduate-level program presented by a recognized professional education association;
(5) completing such home study programs as may be approved by the board of legal specialization and education or the labor and employment law certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; or
*1027 (6) such other methods as may be approved by the board of legal specialization and education and the labor and employment law certification committee.
(f) Examination. The applicant must pass an examination applied uniformly to all applicants, 'to demonstrate sufficient knowledge, proficiency, and experience in labor and employment law to justify the representation of special competence to the legal profession and the public. The examination will be comprehensive in scope and each applicant will be required to demonstrate at least some knowledge in each specific subject tested. However, applicants will be given the opportunity to emphasize their special knowledge in any 1 or more specific subject areas.
(g) Exemption. An applicant who has been substantially involved in labor and employment law for a minimum of 20 years, in accordance with the standards set forth in rules 6-3.5(d) and 6-23.3(b), shall be exempt from the examination. This exemption is only applicable to those applicants who apply within 2 years of the effective date of these standards and meet all other requirements for certification.
RULE 6-23.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. The applicant shall demonstrate continuous and substantial involvement in labor and employment law, in accordance with the standards set forth in rule 6-23.3(b), throughout the period since filing the last application for certification.
(b) Experience. The applicant shall have 25 days of involvement in contested matters involving labor and employment law issues, in accordance with the standards set forth in rule 6-23.3(c), throughout the period since filing the last application for certification. Direct supervision of attorneys engaged in contested matters, as defined in rule 6-23.3(c), may be considered in determining compliance with this requirement.
(c) Education. The applicant shall complete at least 75 hours of continuing legal education in the area of labor and employment law, in accordance with the standards set forth in rule 6-23.3(e), since filing the last application for certification. If the applicant has not attained 75 hours, successful passage of the examination given to new applicants for certification shall satisfy this requirement.
(d) Peer Review. The applicant shall submit the names and addresses of at least 3 attorneys and at least 1 .judge, arbitrator, mediator, or administrator before whom the attorney has appeared or practiced since the last application for certification. The references may not include lawyers who currently practice in the applicant’s law firm. Each reference must attest to the applicant’s reputation for special competence and substantial involvement in the field of labor and employment law, as well as the applicant’s character, ethics, and reputation for professionalism.
(e) Waiver of Compliance. For an applicant who has been continuously certified as a labor and employment lawyer for a period of 14 years or more, the labor and employment law certification committee may waive compliance with either the experience or substantial involvement criterion for recertification, for good cause shown and provided the applicant has complied with all other requirements for recertification.
RULE 8-2.1 REQUIREMENTS FOR ESTABLISHING A LAWYER REFERRAL SERVICE SPONSORED BY A LOCAL BAR ASSOCIATION
The fe-Board of gGovernors of The Florida Bar may adopt such regulations as it deems desirable governing the establishment, operation, and termination of lawyer referral services operated by a local bar association.
*1028 No local bar association shall operate a lawyer referral service except upon application to and approval by the bBoard of gGovernors of The Florida Bar. No lawyer referral service shall be approved by The Florida Bar unless such lawyer referral service is offered primarily for the benefit of the public and unless such lawyer referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 1986.
RULE 8-2.2 CONTENTS OF APPLICATION
An application by a local bar association to the bBoard of gGovernors of The Florida Bar for authority to operate a lawyer referral service shall be in writing and shall be filed with the executive director. Such application shall contain the following:
(a) Statement of Benefits. A statement of the benefits to the public to be achieved by the implementation of the lawyer referral service.
(b) Proof of Nonprofit Status. Proof that the referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 1986.
(c) Submission and Content of Bylaws. The proposed bylaws or rules and regulations that will govern the lawyer referral service. The proposed bylaws shall include the following regulations:
(1) All members of the proposed referral service shall provide proof of professional liability insurance in the minimum amount of $100,000 unless the proposed lawyer referral service itself carries professional liability insurance in an amount not less than $100,000 per claim or occurrence.
(2) The proposed lawyer referral service shall accept membership applications only from attorneys who maintain an office in the geographic area served by the proposed lawyer referral service.
(3)The proposed lawyer referral service shall agree to maintain an alphabetical member list, updated quarterly, with The Florida Bar. In turn, The Florida Bar shall notify the service of any unresolved finding of probable cause against a member. When probable cause has been found at the local grievance committee level, and the lawyer referral service has been notified, such service shall be required to hold referral to the member in question until the matter is resolved. If the member is in good standing with The Florida Bar after the resolution of the matter, then the member may be returned to the service.
(d) Estimated Number of Panel Members. The estimated number of lawyers who will participate in the service.
(e) Number of Local Lawyers. The number of lawyers in the area.
(f) Statement of Need. A statement of the condition that evidences a need for such service in the area.
(g) Geographic Operational Area. The geographic area in which the proposed referral service will operate.
(h) Statement of Operation. A statement of how the lawyer referral service will be conducted.
(i) Statement of Fees. A statement of fees to be charged by the lawyer referral service, including, but not limited to, fees charged by the referral service to members of the public using such service and fees charged by the referral service or remitted to the referral service by member attorneys.
(j) Statement of No Discrimination. A statement that such lawyer referral service will be open for referral to the members of the public without regard to race, sex, national origin, or economic status.
(k) Statement of No Discrimination in Local Bar Membership. A statement that the local bar association is representa *1029 tive of the profession in the area of the service and is open to all members of the profession on an equal basis.
RULE 8-2.3 APPROVAL OF APPLICATION
The board of governors may approve or disapprove the application to operate a lawyer referral service or it may call for additional information upon which to base its decision. No lawyer referral service shall be commenced by or on behalf of a local bar association until approval thereof has been communicated in writing from the bBoard of gGovernors of The Florida Bar.
8-5. IMMUNITY
RULE 8-5.1 GENERALLY
The members of The Florida Bar Lawyer Referral Service Committee and the staff of The Florida Bar Lawyer Referral Service, as well as local bar associations with a lawyer referral service approved under rule 8-2,1, including their directors, officers, lawyer referral service committees, and staff, shall have absolute immunity from civil liability for all acts in the course of their official duties in furtherance of this chapter.
RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
It shall be the duty of the standing committee to receive and evaluate circuit committee reports and to determine whether litigation should be instituted in the court against any alleged offender. The standing committee may approve civil injunctive proceedings, indirect criminal contempt proceedings, or a combination of both, or such other action as may be appropriate. In addition, the duties of the standing committee shall include, but not be limited to:
(a) the consideration and investigation of activities that may, or do, constitute the unlicensed practice of law and exercising final authority to close cases not deemed by the standing committee to then warrant further action by The Florida Bar for unlicensed practice of law,
(b) the supervision of the circuit committees, which shall include, but not be limited to:
(1) prescribing rules of procedure for circuit committees;
(2) assigning reports of unlicensed practice of law for investigation;
(3) reassigning or withdrawing matters previously assigned, -exercising final authority to close cases-not deemed by the standing-committee to then-warrant-further action by The Florida-Bar for unlicensed practice -of law, and-elosing-cases proposed to be resolved by cease and desist affidavit where UPL staff-counsel objects to the closing -of the- case or the acceptance of a cease-and desist affidavit fey-the eircuit committee;
(4) exercising final authority to close cases where UPL staff counsel objects to the closing of the case by the circuit committee;
(5) exercising final authority to accept a cease and desist affidavit in cases proposed to be resolved by cease and desist affidavit where UPL staff counsel objects to the acceptance of a cease and desist affidavit; and
(6) exercising final authority to accept a cease and desist affidavit and monetary penalty in cases proposed by the circuit committee to be resolved by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident;
(4)(7) joining with a circuit committee in a particular investigation;
(§X8) assigning staff investigators, UPL staff counsel, and voluntary bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and
46)(9) suspending circuit committee members and chairs for cause and appointing a temporary circuit committee chair where there has been a suspension, resig *1030 nation, or removal, pending the appointment of a permanent chair by the board of governors;
(c) the initiation and supervision of litigation, including the delegation of responsibility to UPL staff counsel, assistant UPL staff counsel, branch UPL counsel, or bar counsel to prosecute such litigation;
(d) the giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and
(e) furnishing any and all information, confidential records, and files regarding pending or closed investigations of unlicensed practice of law to any state or federal law enforcement or regulatory agency, United States Attorney, state attorney, the Florida Board of Bar Examiners and equivalent entities in other jurisdictions, and Florida Bar grievance committees and equivalent entities in other jurisdictions where there is or may be a violation of state or federal law or the Rules of Professional Conduct of The Florida Bar.
RULE 10-4.1 GENERALLY
(a) Appointment and Terms. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall be for 1 year from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member’s third term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governors. A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum.
(d) Panels. The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer. Division of the circuit committee into panels shall only be upon concurrence of the designated reviewer and the chair of the circuit committee. The 3-member panel shall elect 1 of its members to preside over the panel’s actions. If the chair or vice-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(e) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its investigation and findings to UPL staff counsel. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) closing exercising final authority to close cases not deemed by the circuit committee to warrant further action by The Florida Bar except those cases to which UPL staff counsel objects to the closing of the case;
(2) closing exercising final authority to close cases proposed to be resolved by cease and desist affidavit except those cases to which UPL staff counsel objects to the acceptance of a cease and desist affidavit; and
(3) forwarding to-LJPL staff counsel recommendations for litigation- to be-reviewed by the standing committee, forwarding to *1031 UPL staff counsel for review by the standing committee recommendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident; and
(4) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(f) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and UPL staff counsel.
RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
(a)Circuit Committee Action. Upon concluding its investigation, the circuit committee shall forward a report to UPL staff counsel regarding the disposition of those cases closed, those cases where a cease and desist affidavit has been accepted,_ttiose_cas^j^iere_a_cease_and_desist affidavit with monetary penalty has been recommended, and those cases where litigation is recommended. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting. All recommendations for a cease and desist affidavit with monetary penalty shall be reviewed by the standing committee for final approval. All recommendations for litigation under these rules shall be reviewed by the standing committee and a designated reviewer for final approval prior to initiating litigation.
(b) Action by UPL Staff Counsel. UPL staff counsel shall review the disposition reports of the circuit committee. If UPL staff counsel objects to any action taken by the circuit committee, UPL staff counsel shall forward such objection to the circuit committee within 10 days of receipt of the circuit committee report. UPL staff counsel shall place the action and objection before the standing committee for review at its next scheduled meeting. The standing committee shall review the circuit committee action and the objection, and shall vote on the final disposition of the case. Once a case is closed or a cease and desist affidavit is accepted by the circuit committee or by the standing committee, UPL staff counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
(c) Review by Designated Reviewer. A designated reviewer shall review recommendations by the standing committee that litigation be initiated. If the designated reviewer disagrees with the recommendation for litigation, the designated reviewer shall make a report and recommendation to the board of governors. The designated reviewer shall make the report and recommendation within 21 days following the mailing date of the notice of standing committee action, otherwise the standing committee action shall become final.
RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand *1032 for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. -The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10 — 7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6)The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(3) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record *1033 deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party’s responsive brief or memorandum of law. Any party may request oral argument at the time that party’s brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(d)Referee’s Report.
(1) At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and recommendations as to the manner in which costs should be taxed as provided in rule 10-7.1(d)(2), and a recommendation for final disposition of the cause which may include the imposition of a civil penalty not to exceed $1000 per incident. The original record shall be filed with the report. Copies of the referee’s report shall be served upon all parties by the referee at the time it is filed with the court.
(2) The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
(A) investigative costs;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee; and
(H) any other costs which may properly be taxed in civil litigation.
(3) Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or-reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(d)(l) shall be filed by the referee along with the stipulation.
(e) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector’s brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party’s responsive brief or memorandum of law. Oral argument will be allowed at the court’s discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee’s report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in. the unlicensed practice of law, whether the respondent’s activities should be enjoined by appropriate order, whether costs should be awarded, and whether further relief shall be granted.
(f) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility *1034 thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.
RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punish,ment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president of The Florida Bar, or the chair of the standing committee, alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent’s omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
(1) Affidavit. A respondent asserting in-digency shall file with the referee a completed affidavit containing the financial information required herein and stating that the affidavit is signed under oath and under penalty of perjury. The affidavit must contain the following financial information and calculations as to the respondent’s income:
(A) Net income. Total salary and wages, minus deductions required by law, including court-ordered support payments.
(B) Other income. Including, but not limited to, social security benefits, union funds, veterans’ benefits, workers’ compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
(C) Assets. Including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat, motor vehicle, or other tangible property.
In addition to the financial information, the affidavit must contain the following statement: “I, (name of accused person), agree to report any change in my financial situation to the court or to the indigency examiner.”
(2) Determination. After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
A respondent is indigent if:
(A) the income of the person is equal to or below 250 percent of the then-current federal poverty guidelines prescribed for the size of the household of the accused by the United States Department of Health and Human Services or if the person is receiving Aid to Families with Dependent Children (AFDC), poverty-related veterans’ benefits, or Supplemental Security Income (SSI); or
*1035 (B) the person is unable to pay for the services of an attorney without substantial hardship to his or her family.
(3)Presumption. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(1XA) if-the respondent has been released on bail in the amount of $5,000 or more;
(B) the respondent owns, or has equity in, any intangible or tangible personal property or real property, or the expectancy of an interest in any such property; or
(C) the respondent retained private counsel immediately before or after filing the affidavit asserting indigency as required herein.
(2) if the respondent has-no dependents and has -gross-lneeme- that-exceeds $100 peg-week (the ineome limit shall- be increased by $20 per week for each of the first 2 dependents-of the-respondent and by 410 per-week for each dependent beyond-thefirst2); o-r-
(3) if the respondent owns cash in excess-of $500.-
In-determfning indigency, the court shall also consider: the probable.expense and burden of defending-the c-ase; the- ownership of, or -equity in, any tangible or intangible personal property or real property, or -the expectancy- -of an interest in any such property by the-respondent;' and the amount-of-debts owed by the respondent or debts-that'might-be incurred by the respondent — because-of family illness or other family misfortunes.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1)Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent’s own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
(5) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs, shall be included and entered in the judgment rendered against the respondent.
(6) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
*1036 (d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of “guilty,” together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee’s judgment and recommended sentence within 30 days of the date of filing with the court of the referee’s judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent’s brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 10 days after service of The Florida Bar’s responsive brief or memorandum of law.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $5QQ$2500, imprisonment of up to 5 months, or both.
(f) Costs. The court may also award costs.
RULE 14-2.1 GENERALLY
(a) Appointment of Members; Quorum. The board of governors shall appoint a 9-member standing committee on fee arbitration, not less than one-third of whom shall be nonlawyers. The board of governors will appoint a chair and vice-chair of the committee. A majority of members of the committee constitutes a quorum. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years.
(b) Terms. All members shall be appointed for 3-year terms, each term commencing on July 1 of the year of appointment and ending on June 30 of the third year thereafter. No committee member may serve for more than 2 consecutive full terms.
(c)Duties. The duties of the standing committee include:
(1) prescribing uniform forms and rules of procedure for circuit arbitration committees;
(2) recommending to the board of governors amendments to this rule;
(3) establishing additional circuit arbitration committees where needed;
(4) giving advice concerning fee arbitration matters to officers, the board of governors, staff, sections, or committees of The Florida Bar as requested or required;
(5) gathering and maintaining vital statistical information from the circuit arbitration committees for use by the standing committee, board of governors, or other appropriate bodies;
(6) promoting the system; and
(7) approving administrative fees for each circuit arbitration committee.
RULE 14-3.1 GENERALLY
(a) Membership. The circuit arbitration committees shall consist of not less than 3 members, approved by the board of governors, who practice law or reside within the circuit. The size of a circuit arbitration committee may be increased as the chair of each committee deems necessary. At least one-third of the membership of each committee shall be nonlawyers. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years.
(b) Nomination and Appointment. Voluntary bar association presidents within each circuit and the Florida eCouncil of fe-Bar Association pPresidents may tender names of prospective members of the circuit arbitration committees to the board of governors’ member of such circuit for recommendation to the board of governors, which shall appoint the members. The board of governors- member for each circuit shall designate a chair and vice-chair for each circuit arbitration committee.
*1037 (c) Terms. Terms of service shall be for 1 year, beginning July 1 and ending the following June 30, withy no member serving more than 3 consecutive terms. The expiration of the term of a member shall not disqualify that member from concluding any matter pending before the member. Any member may be removed by the board of governors.
RULE 14-5.3 IMMUNITY
The members of the standing committee and circuit arbitration committees, arbitrators, as well as staff persons and appointed voluntary counsel assisting those committees and arbitrators, shall have absolute immunity from civil liability for all acts in the course of their official duties.
RULE 17-1.3 ACTIVITIES
(a) Authorized Activities. An authorized house counsel, as an employee of a business organization, may provide legal services in the state of Florida to the business organization for which a registration pursuant to rule 17-1.4 is effective, provided, however, that such activities shall be limited to:
(1) the giving of legal advice to the directors, officers, employees, and agents of the business organization with respect to its business and affairs;
(2) negotiating and documenting all matters for the business organization; and
(3) representation of the business organization in its dealings with any administrative agency or commission having jurisdiction; provided however, authorized house counsel shall not be permitted to make appearances as counsel in any court, administrative tribunal, agency, or commission situated in the state of Florida unless the rules governing such court or body shall otherwise authorize, or the attorney is specially admitted by such court or body in a case.
(b) Disclosure. Authorized house counsel, in undertaking legal services permitted pursuant to subdivision 17-1.3(a)(2) or (3), shall disclose their capacity by written or printed communication that shall evidence both the name for the appropriate business organization and the title or function of .the authorized house counsel and whether or not they are licensed to practice in the state of Florida. Such communication shall be transmitted in such manner as reasonably contemplated to create an awareness of the authorized house counsel’s status with respect to the relevant activity. In performing activities under this subdivision, authorized house counsel shall not represent themselves to be members of The Florida Bar licensed to practice law in this state.
(c) Limitation on Representation. In no event shall the activities permitted hereunder include the individual or personal representation of any shareholder, owner, partner, officer, employee, servant, or agent in any matter or transaction or the giving of advice therefor unless otherwise permitted or authorized by law, code, or rule or. as may be permitted by subdivision 17-1.3(a).
(d) Opinions to Third Parties. An authorized house counsel shall not express or render a legal judgment or opinion to be relied upon by any person or party other than in the course of the authorized house counsel’s representation of the business organization in which the authorized house counsel is employed.
RULE 17-1.4 REGISTRATION
(a) Filing with The Florida Bar. The following shall be filed with The Florida Bar by an individual seeking to be certified as authorized house counsel:
(1) A certificate from an entity governing the practice of law of a state, territory, or the District of Columbia in which the registrant is licensed to practice law certifying that the registrant:
ar(A) is a member in good standing; and
*1038 br(B) has a clear disciplinary record as required by subdivision 17-1.2(a)(2);
(2) a sworn statement by the registrant that the registrant:
a.(A) has read and is familiar with the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof; and
br(B) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined in chapter 3 of the Rules Regulating The Florida Bar and rule 17-1.7 herein, and authorizes notification to or from the entity governing the practice of law of each state, territory, or the District of Columbia in which the registrant is licensed to practice law of any disciplinary action taken against the registrant; and
(C) is not subject to a disciplinary proceeding or outstanding order of reprimand, censure, or disbarment, permanent or temporary, for professional misconduct by the bar or courts of any jurisdiction at the time of application for registration under this chapter;
(3) a certificate from a business organization certifying that: it is qualified as set forth in subdivision 17-1.2(b); that it is aware that the registrant is not licensed to practice in Florida; and that it • is not relying upon The Florida Bar in any manner in employing the authorized house counsel;
(4) an appropriate registration application to The Florida Bar as promulgated by the executive director of The Florida Bar; and
(5) an appropriate remittance of a filing fee prescribed and set by the executive director of The Florida Bar in an amount not to exceed the amount applicable for admission to the bar examination for an attorney licensed in a state other than Florida.
(b) Review by The Florida Bar. Upon receipt of the items set forth in subdivision 17-1.4(a), The Florida Bar shall review the items for compliance with this chapter. Any application not meeting the requirements of this chapter shall be sent back to the applicant. Grounds for return include, but are not limited to, filing certificates that do not contain all of the information set forth in subdivision 17-1.4(a), filing a certificate from a business organization that does not qualify as a business organization as defined by these rules, and failure to remit the appropriate fee.
(c) Certification by Court. Upon review of the application by The Florida Bar, The Florida Bar shall file '«nth the clerk of the Supreme Court of Florida the name and address of those registrants complying with the provisions of subdivision 17-1.4(a) along with a request that the registrant be certified as authorized house counsel. Permission for authorized house counsel to perform services under this rule shall become effective upon approval of the request for certification by the clerk of the Supreme Court of Florida for a person employed in Florida or, if the registrant is not yet in Florida, the effective date of employment but not later than 6 months from the filing of the items set forth above.
(d) Annual Registration. The registration pursuant to this section shall be annual in a manner consistent with that applicable to an attorney licensed to practice in the state of Florida including the annual fee therefor as if such authorized house counsel was so licensed, provided, however, such renewal shall include a statement that the certificates filed under subdivision 17-1.4(a)(l)-(3) with the initial registration are current and valid.
RULE 18-1.1 PURPOSE
The purpose of this chapter is to expand the delivery of legal assistance services to military personnel stationed in the state of Florida. This chapter authorizes military attorneys licensed to practice law in jurisdictions other than Florida to be certified *1039 to practice in Florida before Florida courts while formally assigned as a legal assistance attorney at a military base in the state of Florida.
RULE 18-1.2 DEFINITIONS
(a) Authorized Legal Assistance Attorney. An “authorized legal assistance attorney” is any person who:
(1) is admitted to practice law by the highest court of another state, the District of Columbia, or a territory of the United States;
(2) is serving on active duty within the Department of Defense (including the National Guard while in federal service) or the Department of Transportation (with respect to the United States Coast Guard);
(8) is assigned to an installation, unit, and/or activity located within the geographic limitations of the courts of the state of Florida;
(4) has completed The Florida Bar Young Lawyers Division ■ Bridge-the-Gap Seminar Practicing with Professionalism program (Basic Skills Course Requirement); and
(5) appears in connection with official duties as a legal assistance attorney.
(b) Approved Legal Assistance Office. An “approved legal assistance office” for the purposes of this chapter is a military command tasked with providing legal assistance as approved by the Department of Defense or Department of Transportation.
(c) Supervising Attorney. A “supervising attorney” as used herein is a member in good standing of The Florida Bar who supervises an authorized legal assistance attorney engaged in activities permitted by this chapter. The supervising attorney must:
(1) be employed by or be a participating volunteer for an approved legal assistance office (to specifically include military reserve attorneys); and
(2) assume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal assistance attorney participates.
(d)Authorized Legal Assistance Client. An “authorized legal assistance client” is:: an-aetive-duty military member holding-a pay grade of E~3 -or below (or his or her lawful family member) who is permanently - assigned-to -an installation, ■unit, and/or activity leeated-within-the geographic limitations -of the- courts of the state of Florida-.-
(1) an active duty military member who is assigned to an installation, unit, and/or activity located within the state of Florida and who otherwise meets current income eligibility guidelines of the Legal Services Corporation;
(2) a military retiree who resides within the state of Florida and who otherwise meets current income eligibility guidelines of the Legal Services Corporation;
(3) the dependents of any active duty military member or retiree who are otherwise residents of the state of Florida and meet current income eligibility guidelines of the Legal Services Corporation; or
(4) for purposes of settling the affairs of an active duty military member who died while in active military service, the surviving family members of such decedent who are otherwise residents of the state of Florida.
RULE 18-1.3 ACTIVITIES
(a) Permissible Activities. An authorized legal assistance attorney, in association with an approved legal assistance office and under the supervision of a supervising attorney, may perform the following activities:
(1) appear in any court or before any. administrative tribunal in this state on behalf of an ■ authorized legal assistance client, provided the person on whose behalf the authorized legal assistance attorney is appearing has consented in writing *1040 to that appearance and a supervising attorney has given written approval for that appearance, — The-written consent and approval shall be filed in each -case and-shall be brought to the- attention- of a judge of the conr-t or the presiding-officer of the administrative tribunal;
(2) prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the authorized legal assistance attorney is involved^, provided all notices of appearance, pleadings, and documents bear the attorney’s name, the name of the bar to which admitted, that .jurisdiction’s bar number, and the legend “Rule 18 Military Legal Assistance Attorney”; or
(3) engage in such other preparatory activities as are necessary for any matter in which the authorized legal assistance attorney is involved.
Nothing contained herein shall limit the scope of services provided by legal assistance attorneys under Title 10, United States Code, section 1044, and applicable service regulations.
RULE 18-1.4 SUPERVISION AND LIMITATIONS
(a) Supervision by Attorney. An authorized legal assistance attorney must perform all activities authorized by this chapter under the supervision of a supervising attorney.
(b) Representation of Bar Membership Status. Authorized legal assistance attorneys permitted to perform services under this chapter are not, and shall not represent themselves to be, members in good standing of The Florida Bar licensed to practice law in this state.
(c) Range of Legal Issues for Which Representation is Permitted. An authorized legal assistance attorney may appear in court on behalf of authorized legal assistance clients provided the appearance is made concerning a civil matter limited to 1 of the following actions:
(1) all residential landlord/tenant disputes under applicable statutory law;
(2) all actions in small claims court;
(3) domestic relations matters limited solely to name changes, adoptions, paternity, dissolution, child custody -modification, or child/spousal support enforcement^, or modification of prior judgments or orders;
(4) routine or statutory probate matters limited solely to summary administration and disposition of property without administration under applicable statutory law;
(5) all actions under the Florida Consumer Collection Practices Act; and
(6) all actions under the Florida Motor Vehicle Repair Act,; and
(7) any other proceedings if otherwise permitted by applicable law regarding appearances by foreign attorneys.
RULE 18-1.5 CERTIFICATION
Permission for an authorized legal assistance attorney to perform services under this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(a) a letter from the commanding officer of the approved legal assistance office stating that the authorized legal assistance attorney is currently assigned with that legal assistance office and that an attorney employed by or participating as a volunteer with that legal assistance office will assume the duties of the supervising attorney required hereunder;
(b) a certificate from the highest court or agency in the state, territory, or district in which the authorized legal assistance attorney is licensed to practice law certifying that the authorized legal assistance attorney is a member in good standing and has a clear disciplinary record, and advising of any pending complaints and/or investigations involving the authorized legal assistance attorney; and
*1041 (c) a sworn statement by the authorized legal assistance attorney that the attorney:
(1) has read and is familiar with chapter 4 of the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
(2) has completed The Florida Bar Young Lawyers Division Bridge-the-Gap Seminar Practicing with Professionalism program (Basic Skills Course Requirement); and
(3) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 and rule 18-1.7 of the Rules Regulating The Florida Bar, and authorizes the practitioner’s home state to be advised of any disciplinary action taken in Florida.
RULE 18-1.6 WITHDRAWAL OR TERMINATION OF CERTIFICATION
(a) Cessation of Permission to Perform Services. Permission to perform services under this chapter shall cease immediately upon the earlier of the following events:
(1) the commanding officer of the approved legal assistance office filing a notice with the clerk of the Supreme Court of Florida stating that the authorized legal assistance attorney has ceased to be associated with the legal assistance office, which notice must be filed within 30 days after such association has ceased; or
(2) the filing with the clerk of the Supreme Court of Florida of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the authorized legal assistance attorney involved and to the approved legal assistance office to which the attorney had been certified. The de-certified legal assistance attorney shall have 15 days upon receipt of notice to request reinstatement for good cause.
(b) Notice of Withdrawal of Certification. If an authorized legal assistance attorney’s certification is withdrawn for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the authorized legal assistance attorney was involved.

. The Bar seeks a waiver of the rule 1-12.1 requirements that the Board approve all proposed changes and that notice of all proposals be published at least thirty days prior to the filing of the petition. By this opinion, we grant the waiver.

. At oral argument, Bar counsel represented to the Court its belief that the JQC, as a matter of policy, does not intend to seek attorney discipline for judicial misconduct, as it is authorized to do under article V, section 12(a)(1) of the Florida Constitution. We express no view on counsel's representation or JQC policy. Article V, section 12(a)(1) of the Florida Constitution provides in pertinent part:
ll) There shall be a judicial qualifications commission vested with jurisdiction to investigate and recommend to the Supreme Court of Florida the removal from office of any justice or judge whose conduct, during term of office ... demonstrates a present unfitness to hold office, and to investigate and recommend the discipline of a justice or judge whose conduct, during term of office ..., warrants such discipline. For purposes of this section, discipline is defined as any or all of the following: reprimand, fine, suspension with or without pay, or lawyer discipline.